May it please the Court, my name is Quentin Cedar and I am here on behalf of the appellants Christopher Perkins and California Oncology of the Central Valley Medical Group, Inc. The issue appellants have asked this Court to review is whether or not the District Court erred in determining that the Employment Related Acts exclusion under the Maryland policy precluded coverage of the underlying claims asserted against appellants in the underlying action where it specifically omitted from the exclusion the offenses of false imprisonment and detention when those offenses were specifically listed under the policies. Counsel, the reason that these exclusions are written is typically to sort out different sorts of risks. And in this insurance policy, it looks as though there are two risks that are separated out from the policy. One is things that would be covered by workers' comp, if you want the insurance to cover your injuries to employees, you get workers' comp insurance. And the other is Title VII type claims, discrimination type claims, federal and state. And if you want coverage for that, I would guess that it would be a rider that you pay an extra premium for. How should we construe the class of claims where something happens to an employee? What claims would not be covered by the exclusion more generally? I was thinking this claim is a little funny. It's kind of mixed. It's kind of a supervision, but it goes beyond supervision because of the physical touching. But there's no injury that would keep somebody from being able to work, so it's not exactly workers' comp. On the other hand, it is kind of like personal injury because there's battery involved. It's kind of a mixed, hard-to-sort claim. In this case, whether or not the exclusion is applicable is dependent on the language of the exclusion. The language of the exclusion is ambiguous because although it listed numerous of the other offenses listed under the policy's definition of personal injury, it did not list the specific offenses of false imprisonment, detention, and false arrest. And according to the reasoning in Zurich v. Smart and Final, which is not binding authority, it's a central district case, that court held under those particular circumstances that when... Are you saying that what happened here was not an employment-related act, or are you saying it's employment-related but it's not like the acts in the such-as clause? What I'm saying is that it's not an employment-related act as defined or as that is listed in the exclusion of the policy. Why is that? Because it's not amongst the type of employment-related actions that are listed? That's correct. The... But those are just like including, right? But limited just to those types of actions. Where there's a... And this is... From the reasoning in the Smart and Final case, the court looked at it as a catch-all, where in that case it said other employment-related acts under the employment-related acts exclusion. It said that's a catch-all phrase. That's ambiguous when the insurer is aware of these other specific offenses and it lists those specific offenses in its definition of personal injury, but then fails to include them in its exclusion, although it lists numerous of the other offenses that it had provided in its definition of personal injury. By the way, this is a different question, but in California, in deciding this kind of a question, I guess the first question, this is first a duty to defend, but what can the court look at in determining, you know, whether or not there's a duty to defend? The complaint and what else? The complaint and extrinsic facts submitted to the insurer and... Extrinsic facts? Extrinsic facts that evidence there is a potential for coverage, so... And in this case, those include like, at least at the time the second request was made, like a deposition that were taken in the underlying actions, right? Yes, that's correct. Well, it seems to me your argument basically is that you have an arguable case of false imprisonment. False imprisonment was covered under the insuring clause and not specifically included under the employment relations clause. Therefore, it's covered. Is that kind of it in summary? Yes. Okay, but the question I have is slightly different and I don't know if you can answer it. Do you know if California has adopted the enumerated torts doctrine in the context of insurance coverage? Or is this not familiar to you? I'm not familiar. I mean, I don't know. I was going to look it up and frankly didn't check, but basically that would say that for certain intentional torts you've got to plead them. I know California law generally is if you have facts outside the record, that are developed in the record that may lead to coverage, that those can give rise to a duty to defend. But some states have adopted the enumerated torts doctrine, which says for these torts you've got to have the elements, you've got to plead it, and that overrides the other general rule. You don't know one way or the other. I'll ask your counsel. And I'm sorry to spring it on you. Usually if I have a question like that I ask for counsel to be prepared to address it, but it just occurred to me last night. Counsel, the gist of the underlying facts in Kwan's complaint were that Cardoza pushed her around, shoved her and held her arm against the wall in such a way as to corner her for a couple minutes. Why doesn't that fall within this word in the policy, coercion, employment-related coercion? The thing about smart and final is it's our own decision. We're bound to follow California law. Smart and final is arguably distinguishable because there they took them off to a motel room. It's a real plain case of false imprisonment. Wouldn't let them out of the motel room. Here it's at best I felt cornered. Well, to answer the first part of your question as it relates to coercion, and coercion I think in the context. That's one of the words here. In the exclusion. I believe that coercion in that has to do more with or less with the physical circumstances surrounding employee-employer related interaction. And the facts in this. Twice. Sorry. Why does it have to be non-physical? That's. I mean, I'm looking at the policy right now. Perkins 376. And I'm trying to figure out how you get that. I don't believe that that that would apply. She. And if it did, she was still falsely in prison when she was confined. Her liberty to move was restricted where the only way she could move was backwards. And there was a wall behind her. And so I thought she did move, though, even though Cardoza didn't want to. Cardoza screaming at her and holding up her arm. And eventually she leaves. That's correct. After about two or three minutes and under a claim or a cause of action for false imprisonment, it's, you know, any appreciable period of time, no matter how brief. Thank you, Counsel. Counsel. May it please the Court. My name is Jonathan Gross, representing Appellee Maryland Casualty Company. I believe the panel started off with a very good question as to what risks were excluded versus what are covered here. And the policy excludes in this provision all employment-related risks. There's a different kind of insurance you buy for that. I am having a real hard time with this case because it's right on the borderline, and the kind of tort alleged is mixed. If it was just a Title VII claim, no problem. That's in the exclusion. And if it was – but I have trouble here because it isn't. And I'm wondering, it's not a workers' comp claim, not that kind of injuries that keep you from going to work.  It's just two women get into a screaming match. One of them is the boss, and the other one is interfered with for a couple minutes before she flounces off. I don't know what kind of insurance the company is supposed to buy to protect them against that. It's known as EPLI insurance, Your Honor. There is insurance for employment-related risks. Right, but if I might interrupt just for a second, because I think I've got basically the same question as Judge Kleinfeld in a different context. Let's assume, for the sake of argument, that it wasn't just a brief detention, that you had an employment-related dispute. The supervisor grabs the employee, bounds and gags the employee, puts it in the storeroom, keeps the employee locked up for eight hours. Now, that's a false imprisonment. Would you still contend that's an employment-related risk? Well, Your Honor, it depends upon what's going on behind it, because here the factual record is undisputed. They do not dispute that this is an employment-related argument. Well, no, I'll just say it's an employment-related argument, but it results in somebody getting tossed, bound, gagged for six hours, and locked in a cellar. There you have, well, two problems with coverage. One, which is not an issue in this case at all, is you have the intentional next exclusion. No, no. Don't hit your coverage mentality. I'm sorry. I'm just asking on an employment-related. Because it seems to me the argument is, and I just want you to understand where I'm going, it may be slightly different, but look, if there's an ambiguity, you give coverage and you take it away with the exclusion, you have to be specific. And false imprisonment isn't one of those things that's taken away specifically, so we have to decide whether or not any false imprisonment, if it's related to the employment, is excluded. And that's the genesis of my hypothetical. And we do believe that it is taken away because of any – So in my hypothetical, the answer would be yes. You bound, you gag, you put somebody in for six hours and lock them in the basement or storage cellar. If they had an employment-related argument, no coverage, even though false imprisonment is covered elsewhere on the policy. If the trier fact were determined it's an employment-related action, yes, because the exclusion is for personal and advertising injury. And personal injury is including – But when you said trier fact, then that indicates to me duty to defend, which is what this case is all about. If there's some ambiguity – in other words, you're saying if the trier fact found it was employment-related, it's covered. But you would still have a duty to defend there until a trier fact determined that it was an employment-related, even if I were to agree with you. Well, not necessarily. And maybe I misspoke. I think that there are certain situations where there is no factual dispute, so it's not left to a trier fact to determine whether or not there's a tribal issue of fact as to whether it's employment-related. This is one of them. This was an employment-related dispute. It's undisputed by the parties. Therefore, there is nothing for the trier fact to determine. I think I misspoke, and I'd like to withdraw that. Mr. Gross, you agree with the district court's conclusion that under the facts here, there could be a claim for false imprisonment. Do you agree with that? Actually, I disagree. And the reason why I disagree is because – and we've presented the whole record before the court of everything, and time and again the claimant is saying that she kept moving, she was not confined, she refused to go where the supervisor wanted her to go. But she was backed up in a corner, right? No, she wasn't, Your Honor. I would like to – there's – the record says that she's continually arguing. She is being backed up toward the corner, but there is nothing in the record. There is nothing in the record that says that she was actually in the corner for two to three minutes. That is an interpretation that the appellants would like the court to read into it. But when you look at the actual language of what is said in the deposition, the whole time she is arguing for two to three minutes. And then when she wants to leave, she decides to leave and she leaves. So it's your position that in the underlying case, if the jury returned a verdict for the plaintiff for false imprisonment, it would be it would be reversible as a matter of law. Based on the evidence that is in the record. Yes. But why does it make any difference in terms of the duty to defend? If they could allege an arguable tort of false imprisonment and California law is pretty generous on that. It's any period of time appreciable. You say it's not appreciable. Plaintiff says it is appreciable. I mean, that's a duty that triggers the duty to defend. I don't know. I don't quite understand your position that if it doesn't give rise to the tort, you don't have to defend it because your policy says you defend it even if it's a frivolous claim. Well, what our position here is that and let's separate the grant of coverage from the exclusion. I assume the court right now is talking about the grant of coverage. We're talking about duty to defend, actually. Right. So the duty to defend just under the grant of coverage. Well, our position here is that there is no factual basis for a court to find that there was a duty to defend because there is no fact basis for false imprisonment. I just don't get that. I have to say I don't either. The duty to defend is broader than the duty to cover. Duty to defend applies if either the claims or the facts pleaded or other evidence available to the insurance company gives rise to the potential for a claim to be made, and the duty applies even if the claim is false, fraudulent, or frivolous. That's true. What he has is a weak claim of false imprisonment. But there is a boundary line, and the boundary line is the duty to defend cannot be triggered when it's not alleged in the complaint and when it cannot be triggered by a speculation or a mere argument. There has to be – when it's outside the complaint, there has to be evidence. Let's get on to something else. Let me give you another hypo. Suppose that two employees, so it's employment-related in that sense, get into a shoving match, but it's not about whether somebody can take leave without permission, as it was in this case. It's about politics. And they start punching each other out, so you've got minor personal injuries. Is that covered? If I understand the court – If I didn't get my question clear, tell me what you don't understand. Okay. As I understand, what you're asking is, is that fall within the employment-related acts exclusion, if that's what you're asking? Is it covered and is it excluded? First you decide whether something is covered, and then you decide if it's excluded. Okay. I'm not sure if it's covered because I'm not sure that the employer is – I'm not sure what the liability of the employer would be if it's just two employees. Maybe if there's a negligence for supervision, then it might – It's easy to plead, negligent hiring, negligent supervision. Yeah. Under that, yeah, it could be covered. It could be covered. And would it be excluded? Under your hypothetical, I don't know. It may not be excluded because I don't know enough facts to find that there would be an employment-related act here. Well – But I'm not sure. The facts, does it fall within the excluded employment-related practices? If the two employees are having – if the fight comes of an argument that relates to politics and nothing to do with the workplace, then the employment-related acts exclusion would not apply, nor would – I mean, of course – So it's covered. It would seem that – It's not excluded. That would seem to be the case. Okay. Now, in this case, which is not like the hypo because the issue was taking off from work, why isn't it mixed, partly like my shoving match or fistfight about politics and partly like ordinary work supervision? And the reason it's mixed is that Cardozo grabbed Kwan by the arm and pushed her around some. Why isn't it both? So there's a possibility of coverage, just as there would be coverage for the shoving match about politics. Okay. Here, the only physical contact was grabbing the arm, turning her around, and that's it. There was no other shoving or pushing. That's battery. It's an unconsensed two-touching. Correct. And that's not covered as an intentional act. But also the underlying record is undisputed that this was an employment-related action and there was no other aspect to it. I see my time is up. If there's anything more I can answer. Just one question. Do you have a view of the enumerated torts doctrine in California? I'm sorry. I don't. Thank you. Thank you, counsel, very much. Counsel, I think all the time on both sides was used up. Unless my colleagues have further questions for appellant, we'll submit the case. Thanks. Perkins v. Maryland Casualty is submitted.
judges: Kleinfeld, Tashima, Thomas